# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>           **Plaintiff,**<br><br>vs.<br><br>WAYNE CARLISLE,<br><br>           **Defendant.** | | Case No. CR13-0075<br><br>**ORDER FOR PRETRIAL<br>DETENTION** |

---

On the 23rd day of October, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Mark A. Tremmel. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On September 25, 2013, Defendant Wayne Carlisle was charged by Indictment (docket number 2) with attempted enticement of a minor (Count 1) and commission of a felony offense involving a minor while being required to register as a sex offender (Count 2). At the arraignment on September 26, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on November 25, 2013. The Government requested Defendant be detained pending trial, and a detention hearing was scheduled for October 1, 2013. Prior to the hearing, however, Defendant waived his right to a detention hearing, subject to his ability to request and receive a prompt hearing at a later time. On October 15, 2013, Defendant asked for a detention hearing, and a hearing was scheduled on October 23, 2013.

At the hearing, Special Agent Michael McVey of the Iowa Division of Criminal Investigation testified regarding the circumstances underlying the instant charges. In September and October 2012, McVey maintained a profile on the Yahoo Messenger site, posing as a 14-year-old girl. On September 30, 2012, Defendant initiated a "chat" with the purported 14-year-old girl. During that initial chat, Defendant transmitted a video of a male appearing to masturbate.[1] Defendant engaged in additional chats with the purported 14-year-old girl in October, and discussed exchanging money for sex.

Special Agent McVey also chatted, using his profile as a 14-year-old girl, with Patricia Becker, who apparently resided with Defendant at that time. On October 17, 2012, the Becker profile contacted the purported 14-year-old girl and discussed meeting at a park in Hiawatha and exchanging sex for marijuana. Defendant contacted the purported 14-year-old girl later that day and they made further arrangements to meet. When Special Agent McVey arrived on the scene, he found Defendant with marijuana on his person and a condom at the picnic table where he had been sitting. Defendant admitted that he had chatted with the purported 14-year-old girl, using both his profile and the profile of Patricia Becker.

Special Agent McVey also testified that Defendant's 13-year-old daughter had reported Defendant improperly touched her genital area while camping in the summer of 2013. Apparently, however, the daughter had made earlier reports of Defendant and others touching her improperly. Some of the reports were determined to be "unfounded." McVey testified that the daughter also told authorities that Defendant had shaved her genital area. On cross-examination, McVey was asked whether it was reported that Defendant had done so at the request of the child's mother. On redirect examination,

---

[1] At the hearing, Special Agent McVey could not recall whether Defendant could be identified as the person on the video.

McVey testified that the child's mother denied asking Defendant to shave her daughter's genital area.

Defendant is 36 years old. He has lived in eastern Iowa all of his life, and prior to his arrest was living primarily with his mother in Oelwein. Also living with Defendant's mother was her boyfriend, who is a felon and is required to register as a sex offender. On weekends, Defendant apparently resided with his grandmother in Cedar Rapids, and he could return to her address if released.

Defendant is single, but was married from 2009 to 2011. He has two children from that relationship (ages 7 and 13). Defendant also has five children from five other relationships (ages 18, 18, 18, 13, and 6 months). Defendant admitted that he has not paid any child support for more than 17 years, and estimated that he is at least $75,000 in arrears.

Defendant has been unemployed since at least 2000. He attributes his unemployment to the fact that he "was in-and-out of prison." Defendant is supported by his mother and food stamps. Defendant stated that he suffers from epilepsy, but he is not prescribed medication and has not had a major seizure in the past 18 months. He denied suffering from any emotional or psychiatric problems as an adult, but was committed to the psychiatric unit at St. Luke's Hospital as a teenager.

Defendant admitted using marijuana "quite a bit" for most of his life, beginning at approximately age 10. When he was not under correctional supervision, Defendant would use marijuana daily. Defendant reported that he last used marijuana five days prior to his arrest.

Defendant has an extensive prior criminal record. As a juvenile, Defendant was adjudicated delinquent for numerous offenses, and was placed at five different facilities.

On May 10, 1994, at age 18, Defendant was charged in Black Hawk County with operating a motor vehicle without the owner's consent. Eighteen days later, while the first

3

charge was pending, Defendant was charged in Linn County with the same offense. On October 17, 1994, Defendant failed to appear for a plea hearing on the first charge. The next day, he was charged in Linn County with carrying weapons. Defendant ultimately received a suspended prison term on the operating without owner's consent charge, but his probation was later revoked and he was sentenced to 90 days in jail.

On March 4, 1995, Defendant was charged with operating while suspended. He failed to appear at the initial appearance on March 8, and a warrant was issued for his arrest. On March 16, Defendant was charged with theft in the fifth degree. That case is significant because on four separate occasions the Defendant failed to appear for a court hearing and a warrant was issued for his arrest. Defendant was twice found in contempt of court and sentenced to 50 days in jail.

On August 1996, Defendant was charged and later convicted of two counts of lascivious acts with a child. According to the records, Defendant performed sex acts with two 13-year-old females against their wills. Defendant received a five-year prison term on December 20, 1996 and was released on May 4, 1999 when he discharged his sentence.

In 2000, Defendant was charged and later convicted of driving while suspended (four times) and failure to register as a sex offender. In 2001, Defendant was convicted twice for driving while barred. During the early part of 2002, Defendant was convicted twice more of driving while barred.

On August 25, 2002, Defendant was charged with driving while barred in Buchanan County. While that charge was pending, Defendant was charged and later convicted of driving while barred and failure to register as a sex offender. On April 4, 2003, Defendant was sent to prison for two years on the driving while barred charge in Buchanan County. He was placed on work release on November 11, 2003, but his work release was revoked in January 2004. He was discharged at the end of his sentence on March 10, 2004.

4

In 2005, Defendant was charged and convicted of failure to register as a sex offender. He received a five-year prison term on June 6, 2005 and was discharged at the end of his sentence on September 9, 2007.

On April 2, 2008, Defendant was charged and later convicted of failing to register as a sex offender, possession of a controlled substance, and operating a motor vehicle while intoxicated. Defendant received suspended prison and jail terms for these offenses, but while on probation was charged and convicted of theft, third degree in Buchanan County. On March 18, 2009, Defendant received a two-year prison term on the theft charge. On April 6, 2009, his probation was revoked on the failure to register charge and he received a five-year prison term. On January 28, 2011, Defendant discharged his theft prison term and was placed on work release on the failure to register conviction. Defendant violated his work release requirements, however, and his work release was revoked on May 31, 2011. He was discharged on July 31, 2011 at the end of his sentence.

On December 31, 2012, Defendant was charged and later convicted of providing false information when registering as a sex offender. On September 9, 2013, Defendant was sentenced to 180 days in jail, with all but 30 days suspended.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves

an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

6

(3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with attempted enticement of a minor and commission of a felony offense involving a minor while being

required to register as a sex offender. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to 18 U.S.C. § 3142(f)(1)(A) and (E).

Regarding the second step, there is a rebuttable presumption that Defendant should be detained. The Court is required to consider the nature and circumstances of the offense. Here, Defendant allegedly engaged in online chats with someone who he believed was a 14-year-old girl. Defendant discussed exchanging drugs and money for sex. Defendant also sent lewd videos to the purported 14-year-old girl and arranged to meet her in a local park. Defendant appeared at that meeting and brought along marijuana and a condom. Defendant admitted engaging in the chats, using both his profile and the profile of the woman with whom he was living. The Court believes that the weight of the evidence against Defendant is strong.

Defendant does not have a stable residence, nor does he have stable employment. Defendant cannot return to his mother's house to live, because she is living with a felon who is required to register as a sex offender. Defendant has not been employed for at least 13 years. Defendant has seven children, but has not paid child support for at least 17 years. Defendant admits using marijuana when it's available to him, and last used marijuana five days prior to his arrest.

Defendant's extensive prior criminal record includes convictions for lascivious acts with a child. By the Court's calculation, Defendant has been sent to prison four times. He has been found in contempt of court for failing to comply with court orders, and has had his probation and work release revoked on multiple occasions. Given the nature of the offense, Defendant's criminal record, and his failure to comply with the terms of supervision, the Court believes that Defendant's release would constitute a danger to the community.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of

proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1.    The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.    The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.    On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4.    The time from the Defendant's oral motion for detention hearing (October 15, 2013) to the filing of this Ruling (October 24, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 24th day of October, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

9